## Alexandria

ERIC DAVID STRAWDERMAN

v.

COMMONWEALTH OF VIRGINIA

No. 0925-85

Decided January 6, 1987

COUNSEL

Ronald Wayne Fahy, for appellant.

W. Mark Dunn, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

KEENAN, J. — Eric D. Strawderman was convicted of rape, malicious wounding, abduction, and three counts of using a firearm in the commission of these crimes. On appeal, Strawderman argues that the trial court erred in refusing to grant a mistrial after allowing evidence that Strawderman had previously threatened people with guns. Strawderman asserts that this evidence was so prejudicial that its admission was not cured by the court's later instruction that the jury disregard it. Based upon our review of the record, we find no manifest probability that Strawderman was prejudiced by the court's ruling and accordingly, we affirm the convictions.

At trial, the victim testified that Strawderman forced his way into her home on December 18, 1984. Once inside, Strawderman knocked the victim to the floor and hit her on the head with his gun. He then locked the door, pointed the gun at her, and de-

manded money. The victim gave Strawderman one hundred dollars from her purse. When Strawderman demanded more money, the victim stated that there was no other money in the house and offered to take Strawderman to the bank so that she could cash a check. Strawderman rejected this idea and told the victim that he wanted to see her bedroom. Testifying in his own behalf, Strawderman admitted on cross-examination that he pointed a gun at the victim and told her to take him to the master bedroom, believing that there might be more money there.

The victim further testified that when they got to the bedroom, Strawderman ordered her to lie down on the bed while he searched the room. The only money he found was a ten dollar bill from an old wallet. The victim again told Strawderman that there was no more money in the house and suggested that they go to the bank. She testified that she made this offer because she was afraid of him and was certain that he intended to kill her. The victim also testified that she was expecting her daughter home from school at the time, and she wanted Strawderman out of the house before her daughter arrived.

Rather than go immediately to the bank, Strawderman wanted to search the other bedrooms. The victim took him to the other bedrooms, and when Strawderman could not find any money, he agreed to go to the bank. The victim testified that before going to the bank, Strawderman forced her at gunpoint to engage in sexual intercourse. He then told her to put her clothes on and take him to the bank. On the way to the bank, Strawderman kept the gun inside his jacket and continued to threaten the victim with it. The victim cashed a check at the drive-in window of the bank and then parked near the front door. She offered to go inside to cash another check and began to get out of the car. Strawderman grabbed her purse but the handle broke off. The victim ran into the bank and screamed for help. When Strawderman saw people pointing at him, he ran away.

At trial, during cross-examination of Strawderman, the prosecutor asked: "Have you ever threatened people with guns before, Mr. Strawderman?" Strawderman responded: "Yes, sir." Over the defendant's objection, the court allowed the question. At the conclusion of Strawderman's testimony, the prosecutor asked the court "out of an over-abundance of caution" to instruct the jury to disregard the question about Strawderman's prior threats with

guns. At this point, defense counsel requested a mistrial. The court declined to rule that the question was improper, but agreed to instruct the jury to disregard it.

The court instructed the jury as follows:

*The Court:* Ladies and gentlemen, before we call the next witness, I am going to give you a very brief instruction at this time concerning a question that was asked a few minutes ago in cross-examination.

The Defendant was asked on cross-examination whether he had ever threatened anyone other than [the victim] with a gun.

You are instructed to totally disregard that question that was asked, as well as the Defendant's answer to that particular question. There were no follow-up questions. It was just a question and an answer, and at this time I am instructing you, and pursuant to the oath that you have taken before, I am sure that you will follow the instruction.

That is simply that you are to totally disregard the question as well as the Defendant's answer to that particular question.

Strawderman argues that once the jury heard that he had previously threatened other people with guns, no cautionary instruction could remove the taint of prejudice caused by this testimony. In response, the Commonwealth argues that no error was committed as the evidence was admissible to show Strawderman's motive, intent and absence of mistake. The Commonwealth further argues that even if it was error to allow the question, the court's cautionary instruction prevented any prejudice to Strawderman. Finally, the Commonwealth argues that Strawderman substantially confessed to each of the crimes while testifying in his own behalf, and therefore, the admission of the disputed evidence did not prejudice him.

■ Initially, we find that the trial court erred when it permitted the prosecutor to question Strawderman whether he had previously threatened other people with guns. The testimony given in response to that question constituted evidence of other crimes.

Such evidence is generally inadmissible, as explained by the Supreme Court in *Kirkpatrick v. Commonwealth*, 211 Va. 269, 176 S.E.2d 802 (1970):

> The general rule is well established that in a criminal prosecution, proof which shows or tends to show that the accused is guilty of the commission of other crimes and offenses at other times, even though they are of the same nature as the one charged in the indictment, is incompetent and inadmissible for the purpose of showing the commission of the particular crime charged.

*Id.* at 272, 176 S.E.2d at 805.

The reason for this rule is that "such evidence confuses one offense with the other, unfairly surprises the defendant with a charge he is unprepared to meet, and, by showing that the accused has a criminal propensity, tends to reverse his presumption of innocence of the crime on trial." *Lewis v. Commonwealth*, 225 Va. 497, 502, 303 S.E.2d 890, 893 (1983).

As an exception to the general rule, "where the motive, intent, or knowledge of the accused is at issue, evidence of other offenses is admissible if it shows the conduct or attitude of the accused toward his victim, establishes the relationship between the parties, or negates the possibility of accident or mistake." *Moore v. Commonwealth*, 222 Va. 72, 76, 278 S.E.2d 822, 824 (1981).

While in the case before us, Strawderman testified that the gun "fell" on the victim's head by mistake during the struggle at the door, his prior threats to others were not probative of this issue. They had no bearing on whether Strawderman intended to hit the victim or did so by mistake. Evidence that Strawderman had previously threatened other people with guns, even if slightly probative, was as a matter of law so prejudicial as to outweigh any probative value. Therefore, admission of this evidence was error. *See Lewis*, 225 Va. at 502, 303 S.E.2d at 893.

We now must determine whether, having instructed the jury to disregard this evidence, the trial court erred in refusing to grant a mistrial. In resolving this question, we examine the record before us in accordance with the test set forth in *Asbury v. Commonwealth*, 211 Va. 101, 175 S.E.2d 239 (1970). There, the

Court stated:

> The rule in Virginia is well established that a judgment will not be reversed for the admission of evidence which the court afterwards directs the jury to disregard unless there is a manifest probability that the evidence has been prejudicial to the adverse party.

*Id.* at 104, 175 S.E.2d at 241; *see also Lewis v. Commonwealth,* 211 Va. 80, 82-84, 175 S.E.2d 236, 238-39 (1970).

In order to determine whether there is a manifest probability that Strawderman was prejudiced by the admission of the evidence, we look to the record as a whole. The record shows that during his testimony Strawderman admitted that when he went to the victim's house he intended to commit robbery. In his statement to Investigator D.C. Kelly of the Prince William County Police Department, which was received in evidence, Strawderman admitted that he struck the victim on the head with his gun. While testifying, Strawderman admitted that he directed the victim at gunpoint throughout the house, demanding money. He testified that in response to his demands, she gave him money.

Strawderman also testified that while he was pointing the gun at the victim in the master bedroom, she unzipped his pants and suggested that they have sex. He admitted penetrating her vagina, but claimed that it was a consensual act. Later in his testimony, however, Strawderman admitted that during the act of sex, he had the gun pointed at the victim's head. Because Strawderman made these admissions relating to each of the crimes charged, we find no manifest probability that, in the jury's determination of his guilt, he was prejudiced by the admission of the disputed evidence.

Next, we consider whether there is a manifest probability that admission of evidence of his prior threats with guns to others prejudiced Strawderman in the jury's determination of punishment. The jury fixed punishment as follows: (1) forty years imprisonment for rape; (2) four years imprisonment for the use of a firearm in the commission of rape; (3) eight years imprisonment for malicious wounding; (4) two years imprisonment for the use of a firearm in the commission of malicious wounding; (5) forty years imprisonment for abduction; and (6) four years imprisonment for the use of a firearm in the commission of abduction. The

trial court sentenced Strawderman in accordance with the jury's verdict and suspended twenty years of the abduction sentence.

The facts and circumstances surrounding these crimes involved violent, abusive, and life-threatening conduct. Further, as previously noted, the jury received evidence of admissions by Strawderman regarding each of the crimes charged. For these reasons, we find that there is no manifest probability of prejudice resulting from admission of the disputed evidence in the sentences Strawderman received for the commission of these acts.

In summary, we find that while the trial court erred in allowing the evidence of prior threats to others, it did not err in refusing to grant a mistrial based on our finding that there was no manifest probability that Strawderman was prejudiced by the evidence. Accordingly, the judgment of the trial court is affirmed.[1]

*Affirmed.*

Duff, J., and Moon, J., concurred.

---

[1] Other issues raised by Strawderman on this appeal have no precedential or public value and, therefore, are considered and disposed of in an unpublished order filed with the clerk of this court from whom it is available upon request.