COURT OF APPEALS OF VIRGINIA


Present: Judges Elder, Annunziata and Humphreys
Argued at Richmond, Virginia


STUART DALE BENNETT
                                              OPINION BY
v.    Record No. 0211-00-2        JUDGE ROSEMARIE ANNUNZIATA
                                            MAY 15, 2001
COMMONWEALTH OF VIRGINIA


         FROM THE CIRCUIT COURT OF DINWIDDIE COUNTY
                  Thomas V. Warren, Judge

         Neil Kuchinsky (Kuchinsky & Yeamans, P.C., on
         brief), for appellant.

         Leah A. Darron, Assistant Attorney General
         (Mark L. Earley, Attorney General, on brief),
         for appellee.


     Stuart Dale Bennett, appellant, was convicted in the

Dinwiddie County Circuit Court on January 10, 2000 on two counts

of felonious assault against a law enforcement officer, in

violation of Code § 18.2-57(c), and one count of felony attempt

to escape, in violation of Code §§ 18.2-479 and 18.2-26.  The

jury recommended, and the court imposed, a sentence of six

months in jail for each assault count and a $1 fine for the

attempted escape count.  Bennett represented himself during the

trial and was twice held in contempt for using inappropriate

language.  The court imposed a $50 fine for the first contempt

charge and sentenced Bennett to five days in jail on the second

charge.

On appeal, Bennett contends: (1) his daughter, a minor, had no authority to authorize a warrantless entry into his home; (2) he had a legal right to threaten the use of force when the deputies refused to leave his home; (3) the evidence was insufficient, as a matter of law, to support the assault convictions; (4) he could not be convicted of attempt to escape absent evidence that he actually knew he was under arrest; (5) the jury instructions pertaining to the assault offenses were erroneous because they failed to accurately state the law as it relates to a verbal assault and they failed to advise the jurors of his right to repel trespassers; (6) the court abused its discretion in finding him in contempt; and (7) the court erred by not offering him the right to obtain counsel before convicting him of the contempt charges.

For the following reasons, we affirm in part and reverse in part.

## I.

### BACKGROUND

On appeal, we review the evidence and all reasonable inferences that may be drawn from such evidence, in the light most favorable to the Commonwealth, the party prevailing below. Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). Around midnight on May 2, 1999, Bennett approached Dinwiddie County Sheriff's Deputy Timothy Martin in the parking lot of a restaurant and asked him to investigate an incident

involving juveniles who had created a disturbance by shouting obscenities and making threats while driving by Bennett's home. In the course of investigating Bennett's complaint, Deputy Martin learned that Bennett had chased the juveniles, driving his vehicle at a high rate of speed, and that he had brandished a firearm.

Approximately one hour after receiving Bennett's complaint, Deputy Martin, accompanied by Deputy Robert Poarch, proceeded to Bennett's home and knocked on the door. Bennett's fourteen-year-old daughter, Ann, answered the door. When the officers asked for Bennett, Ann "stepped to the side and pointed back to the kitchen." The deputies "went in and stood between the living room and the kitchen doorway."

Bennett was on the telephone when the officers entered the home. When Bennett ended the call, he told the deputies "to get out of the house." The officers attempted to explain that they were there to investigate "a criminal complaint." Bennett approached the deputies, from approximately twenty feet away, until he was standing within inches of the two deputies. Bennett continued to order the deputies out of the house, shouting profanities and stating that "if [the deputies] didn't leave, it would be an 'F'ing blood bath." Bennett then called the state police to have them come and remove the deputies.

Both deputies testified that they felt "concerned" and "threatened" by Bennett's conduct and requested that he "back

off."  Bennett was not armed, and the deputies did not see any weapons inside the house.  Although Bennett gestured with his hands while speaking to the deputies, he never raised his hands to them or physically threatened them.  Although Bennett was a suspect in the brandishing allegation made by the juveniles, the deputies conceded they had no reason to arrest him when they went to his home; they were merely "investigating" the brandishing allegation.

After being in Bennett's home for approximately ten minutes, the deputies departed.  When the officers were outside, preparing to leave, they observed Bennett and his son exit the back door of Bennett's home, remove a rifle case and a pistol bag from Bennett's car and re-enter the house.

Two days later, Bennett voluntarily arrived at the sheriff's office to have two felony assault arrest warrants served on him.  While Deputy Poarch was in the process of filling out a fingerprint card for Bennett, Bennett became upset and started to leave.  Bennett ignored Deputy Poarch's request to stop, and several officers restrained Bennett and handcuffed him.  When asked whether Bennett was under arrest at the time he tried to leave, Deputy Poarch responded, "[y]es sir, I had served the warrant for him, so he was now under arrest."

Bennett represented himself at trial.  The judge cautioned Bennett during the trial about his use of inappropriate language and profanity.  The judge warned Bennett that the use of

profanity or vulgar language, such as "fuck," "crap" and "pissed off," was prohibited and that Bennett would be held in contempt of court if he used such language again.

Bennett acknowledged that he "understood one hundred percent."  Within seconds, however, Bennett used the word "crap" during his testimony and the court found him in contempt. During his closing argument, Bennett used the words, "hell, no," and the court found him in contempt a second time.

At the end of the trial, the court fined Bennett $50 for the first contempt charge and sentenced him to five days in jail for the second charge.

## II.

## ANALYSIS

### A.

## Insufficiency of Evidence to Support Assault Convictions

Bennett contends the evidence produced by the Commonwealth was insufficient, as a matter of law, to support the convictions for assaulting the two officers.  The Commonwealth contends that because Bennett failed to preserve this issue for appeal at the trial level, his claim is barred under Rule 5A:18.[1]  Bennett acknowledges he did not preserve the issue but asks us to invoke

---

[1] Rule 5A:18 provides:

> No ruling of the trial court . . . will be
> considered as a basis for reversal unless
> the objection was stated together with the
> grounds therefor at the time of the ruling

the ends of justice exception to Rule 5A:18 in order to consider the merits of his claim.

"Under Rule 5A:18, we do not consider trial court error as a basis for reversal where no timely objection was made except in extraordinary circumstances to attain the ends of justice." Redman v. Commonwealth, 25 Va. App. 215, 220, 487 S.E.2d 269, 272 (1997). "In order to show that a miscarriage of justice has occurred, thereby invoking the ends of justice exception, the appellant must demonstrate that he or she was convicted for conduct that was not a criminal offense or the record must affirmatively prove that an element of the offense did not occur." Id. at 221-22, 487 S.E.2d at 273. Because we find that Bennett was convicted for conduct that was not criminal, we invoke the ends of justice exception to Rule 5A:18 and proceed to the merits of Bennett's claim.

"Assault" is defined at common law as:

> "[A]n attempt or offer, with force and violence, to do some bodily hurt to another, whether from wantonness or malice, by means calculated to produce the end if carried into execution; as by striking at him with a stick or other weapon, or without a weapon, though he be not struck, or even by raising up the arm or a cane in a menacing manner, by throwing a bottle of glass with an intent to strike, by levelling a gun at another within a distance from which, supposing it to be loaded, the contents might injure, or

> except for good cause shown or to enable the Court of Appeals to attain the ends of justice.

any similar act accompanied with
circumstances denoting an intention coupled
with a present ability, of using actual
violence against the person of another."

Harper v. Commonwealth, 196 Va. 723, 733, 85 S.E.2d 249, 255 (1955) (citation omitted); see also Jones v. Commonwealth, 184 Va. 679, 681, 36 S.E.2d 571, 572 (1946); Merritt v. Commonwealth, 164 Va. 653, 658-59, 180 S.E. 395, 398 (1935). Words alone, however, do not constitute an assault. Harper, 196 Va. at 733, 85 S.E.2d at 255.[2] "'In order to constitute an assault there must be an overt act or an attempt, or the unequivocal appearance of an attempt, with force and violence, to do physical injury to the person of another.'" Merritt, 164 Va. at 658, 180 S.E. at 397 (citation omitted); see also Harper, 196 Va. at 733, 85 S.E.2d at 255; Burgess v. Commonwealth, 136 Va. 697, 708, 118 S.E. 273, 276 (1923); Am. Jur. Assault § 24 (2000).

In this case, both officers testified that Bennett was not armed and made no threatening gestures with his hands. Although Bennett stood within inches of the officers, he made no overt act or attempt to physically harm either officer during the time the officers remained in his home after being asked to leave.

---

[2] The Commonwealth cites Epps v. Commonwealth, 28 Va. App. 58, 502 S.E.2d 140 (1998), for the proposition that words alone may be enough to constitute an assault. The Epps opinion was withdrawn following a hearing en banc and is not binding on this Court. Epps v. Commonwealth, 29 Va. App. 169, 510 S.E.2d 279 (1999) (en banc).

Therefore, we find the evidence was insufficient, as a matter of

law, to prove Bennett assaulted the two officers.  Accordingly,

we reverse the two assault convictions and dismiss the

indictments.[3]

B.

Sufficiency of Evidence to Support Attempted Escape Conviction

Bennett contends the evidence was insufficient, as a matter

of law, to support a conviction for attempted escape, in

violation of Code §§ 18.2-479 and 18.2-26.  The Commonwealth

contends that because Bennett failed to preserve this issue for

appeal at the trial level, his claim is barred under Rule 5A:18.

We review the record to determine whether, as Bennett claims, a

miscarriage of justice has occurred, warranting invocation of

the ends of justice exception to Rule 5A:18.  Redman, 25 Va.

App. at 218, 487 S.E.2d at 271.

Code § 18.2-479(B) provides:

> If any person lawfully confined in jail or
> lawfully in the custody of any court or
> officer thereof or of any law-enforcement
> officer on a charge or conviction of a
> felony escapes, otherwise than by force or
> violence or by setting fire to the jail, he
> shall be guilty of a Class 6 felony.

---

[3] Because we find the evidence was insufficient, as a matter
of law, to support the assault convictions, we need not address
Bennett's claim that the jury instructions were erroneous
because they failed to include the defense of use of force in
repelling a trespasser.

Attempted crimes are specific intent crimes; therefore, the Commonwealth was required to prove: (1) Bennett intended to escape from custody and (2) he engaged in some act in furtherance of escaping. Brown v. Commonwealth, 33 Va. App. 296, 311, 533 S.E.2d 4, 11 (2000).

Bennett contends the Commonwealth failed to prove he knew he was in custody and not free to leave at the time he attempted to exit the police station and, therefore, the Commonwealth failed to prove he intended to escape. Although Bennett arrived at the police station voluntarily, he came there for the purpose of having two felony arrest warrants served on him. Deputy Poarch testified that by the time Bennett attempted to leave, he had already served the warrants on Bennett. In addition, when Bennett began to leave, Poarch ordered Bennett to stop. Bennett ignored Poarch's request to stop, and Bennett had to be physically restrained. From this evidence, the jury could have found that Bennett knew he was in custody and not free to leave. Therefore, we cannot find that Bennett "was convicted for conduct that was not a criminal offense" or that the record "affirmatively prove[s] that an element of the offense did not occur." Redman, 25 Va. App. at 222, 487 S.E.2d at 273. Accordingly, we find the sufficiency issue is barred under Rule 5A:18, and we affirm Bennett's conviction for attempted escape.

C.

## Contempt Convictions

### 1. Sufficiency of the Evidence

Bennett also claims the evidence was insufficient to support the two contempt convictions. In response to the Commonwealth's contention that this issue also is barred under Rule 5A:18, we review the record to determine whether the exception to Rule 5A:18 applies, as Bennett claims.

A trial court has the power to punish summarily for contempt under Code § 18.2-456 for:

> (1) Misbehavior in the presence of the court, or so near thereto as to obstruct or interrupt the administration of justice;
>
>    *     *     *     *     *     *     *
>
> (3) Vile, contemptuous or insulting language addressed to or published of a judge for or in respect of any act or proceeding had, or to be had, in such court, or like language used in his presence and intended for his hearing for or in respect of such act or proceeding;
>
>    *     *     *     *     *     *     *
>
> (5) Disobedience or resistance of an officer of the court, juror, witness or other person to any lawful process, judgment, decree or order of the court.

In this case, the court ordered Bennett to refrain from using profane and inappropriate "gutter" language. Bennett then proceeded to use such language on two separate occasions during the trial proceedings. Because Bennett disobeyed an order of

the court and his misconduct interrupted the court proceedings, we find that a miscarriage of justice did not occur with respect to the court's summarily punishing Bennett for contempt.  Code § 18.2-456.  We, therefore, find this issue is barred under Rule 5A:18.

## 2.  Right to an Attorney

Although Bennett alleged in his questions presented that he should have been offered the option of obtaining counsel before being convicted on the contempt charges, he did not address this argument in his brief.  Therefore, we will not consider the issue.  Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992) ("Statements unsupported by argument, authority, or citations to the record do not merit appellate consideration.").

Accordingly, we affirm Bennett's two contempt convictions.

Affirmed in part, reversed and dismissed in part.